# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| HILL-ROM SERVICES, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 1:17-cv-4725-WTL-MJD |
| TELLISENSE MEDICAL, LLC, et al., | ) |
| Defendants. | ) |

## ENTRY ON MOTIONS TO DISMISS

This cause is before the Court on the motions to dismiss for lack of personal jurisdiction filed by Defendants Convergence Systems Limited ("Convergence") (Dkt. No. 63)[1] and Brian Woodbury (Dkt. No. 57), and a motion to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6) filed by Helvetia Wireless, LLC ("Helvetia"), Roc Lastinger, and Woodbury (collectively, the "Helvetia Defendants") (Dkt. No. 59). The Court, being duly advised, **GRANTS** the motions of Convergence, Dkt. No. 63, and Woodbury, Dkt. No. 57, and **GRANTS IN PART** the Helvetia Defendants' motion, Dkt. No. 59.

### I. Factual Background

The Plaintiff is a healthcare company that provides a range of patient care solutions, including the design, manufacture, and sale of, among other things, hospital beds for use by hospitalized and bedridden patients. To assist healthcare personnel with the detection of incontinence events in hospital beds, the Plaintiff has been working on the development of moisture detection systems that would detect and signal the presence of incontinence events to healthcare personnel. In 2011, the Plaintiff began a new project to develop incontinence event

---

[1] This is the "corrected image" of Dkt. No. 54.

detection technology and systems (the "Project"). In 2013, the Plaintiff sent Defendants Tellisense Medical, LLC ("Tellisense"), Encompass Group, LLC ("Encompass"), and Robert Ufford a statement of work that set forth the purpose and requirements of the project, and Defendant Lastinger subsequently formed Defendant Helvetia to work on the Project. The Plaintiff, Tellisense, Ufford, and Lastinger also entered into a master services agreement (the "Service Agreement") regarding the Project. The Service Agreement had various provisions related to confidential information and intellectual property, most notably that the Plaintiff would own all rights in any intellectual property developed through the Project. In addition, as part of the Service Agreement, Tellisense, Encompass, and Ufford agreed to "maintain in effect written agreements with each of its employees, contractors, agents and vendors who participate in rendering Services hereunder." Dkt. No. 16 at 11. The Plaintiff alleges that, during the course of the Project, the Defendants acquired the Plaintiff's confidential information and trade secrets and subsequently misappropriated the Plaintiff's trade secrets and violated various contractual arrangements.

## II.  Motions to Dismiss for Lack of Personal Jurisdiction

Defendants Convergence and Woodbury have each moved to dismiss for lack of personal jurisdiction. When a defendant challenges the Court's personal jurisdiction over it, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Where, as here, a motion to dismiss is resolved without an evidentiary hearing, the plaintiff's burden is satisfied if it makes a prima facie case of personal jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "In evaluating whether the prima facie standard has been satisfied, the plaintiff is

entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (citations omitted).

Where, as here, there is no applicable federal statute providing for nationwide service of process, a federal district court may exercise personal jurisdiction over a defendant if a court of the state in which it sits would have such jurisdiction. Fed. R. Civ. P. 4(k)(1)(A). This Court sits in Indiana, and Indiana Trial Rule 4.4(A) provides for jurisdiction "on any basis not inconsistent with the Constitution of this state or the United States"; in other words, Indiana permits the exercise of personal jurisdiction to the full extent permitted by the Federal Due Process Clause. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).

There are two forms of personal jurisdiction that a court may exercise over a non-resident defendant: "general" and "specific" jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). The Plaintiff does not argue that Convergence or Woodbury is subject to general personal jurisdiction in Indiana; thus only specific personal jurisdiction need be considered. Dkt. No. 74 at 6 (Convergence); Dkt. No. 76 at 5 (Woodbury).

Specific jurisdiction is applicable when the basis of the suit "arises out of or is related to" the defendant's contacts with the forum state. *Jennings*, 383 F.3d at 549. When the defendant is out-of-state:

> [T]he defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant in this case. First, the relationship must arise out of contacts that the "defendant himself" creates with the forum State. . . . Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014). Thus, "specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed its activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the

3

alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). In addition, "[t]he exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice." *Id*.

### A. Woodbury

Woodbury is an Arizona resident who works in Arizona, for Arizona-based Helvetia. The Plaintiff's allegations regarding Woodbury relate to his filing of patents with the United States Patent Office, located in northern Virginia, while in Arizona, through Arizona counsel. The Plaintiff asserts that, through these patents, Woodbury misappropriated the Plaintiff's trade secrets. With regard to his work on the Project, the Plaintiff notes that Woodbury and Lastinger provided the Plaintiff with two videos regarding the testing and demonstration of a prototype incontinence event detection system that Woodbury developed, and that Woodbury traveled to Indiana to train one of the Plaintiff's engineers regarding the procedure for updating project software.

The Plaintiff divides its claims against Woodbury into tort and contract claims. With regard to the Plaintiff's tort claims, the Plaintiff must show that the defendant engaged in (1) intentional conduct; (2) expressly aimed at the forum state; and (3) with the knowledge that the effects would be felt in the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010).

Here, the Plaintiff has failed to point to allegations that show that Woodbury expressly directed his activities at the forum state. The Plaintiff argues that:

> Woodbury's intentional conduct was expressly aimed at Indiana because he participated in the creation of a video demonstration of an early prototype of [the Plaintiff's] system that was provided to [the Plaintiff] and he traveled to Indiana to assist [the Plaintiff] with software development for the project. These acts were done in furtherance of the alleged wrongdoing because the Complaint alleges that Woodbury acquired [the Plaintiff's] confidential information and trade secrets through his work on the Project, at least in-part through contacts he deliberately made with Indiana.

4

Dkt. No. 76 at 14. Despite the Plaintiff's statement that "Woodbury acquired the Plaintiff's confidential information . . . at least in-part through contacts he deliberately made with Indiana," *id.*, the Plaintiff points to no factual assertion to support that conclusion. Indeed, the only factual allegations related to Woodbury's contacts with Indiana are that he produced a training video and assisted with software training. It is unclear how this activity related to his acquisition of the Plaintiff's confidential information and trade secrets; if anything, it suggests a flow of knowledge from Woodbury to the Plaintiff, and not in the opposite direction. *See Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("[I]t is unlikely that those few [contacts], without some evidence linking them to the allegedly tortious activity, would make jurisdiction proper."). This is insufficient to establish specific personal jurisdiction.

With regard to the Plaintiff's contract claims against Woodbury, the Plaintiff must show that "(1) the defendant has purposefully directed its activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC*, 743 F.3d at 492. On this topic, the Plaintiff argues:

> [The Plaintiff's] claims are "related to" Woodbury's forum-related conduct because he traveled to Indiana to assist with the performance of the contract by training [an engineer employed by the Plaintiff] on the software being developed for the Project, and because he created a video for and provided to [the Plaintiff] showing the functionality of a Project prototype.

Dkt. No. 76 at 10. Furthermore, the Plaintiff cites *F. McConnell & Sons, Inc. v. Target Data Systems, Inc.* for the proposition that "[t]he rule in contract cases is that minimum contacts are 'related to' the lawsuit when these contacts involve the 'dealings between the parties in regard to the disputed contract.'" Dkt. No. 76 at 10 (quoting *F. McConnell & Sons, Inc. v. Target Data*

5

*Systems, Inc.*, 84 F. Supp. 2d 961, 969 (N.D. Ind. 1999)). However, even when there is a contract, "contacts involving the forum state should either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278–79 (7th Cir. 1997). Here, Woodbury's contacts with Indiana, namely the training of an engineer and the creation of a video, are unrelated to the substantive legal dispute or the economic substance of the contract. Thus the Court finds that such contacts, even if considered part of a contract, are insufficient to establish personal jurisdiction over Woodbury. Woodbury's motion to dismiss is accordingly **GRANTED**.

### B. Convergence

Convergence is a limited liability company formed under the laws of and headquartered in the Hong Kong Special Administrative Region of the People's Republic of China. It has two employees, and no office locations outside of Hong Kong.

In 2013, Helvetia, a Delaware limited liability company with a principal place of business in Arizona, approached Convergence to request that Convergence assist in certain tasks related to the development of incontinence event detection technology and systems. Helvetia told Convergence that the final product would be shown, and potentially sold, to the Plaintiff. Helvetia never mentioned any trade secrets or other confidential information owned by the Plaintiff, though the Plaintiff states that it disclosed confidential information and trade secrets to Convergence, so that it could perform services for the project. During the project, Convergence conceived and developed information, ideas, inventions, trade secrets, concepts, designs, devices, software, and other technology in part in reliance on the Plaintiff's confidential information. The Plaintiff alleges that Convergence misappropriated its trade secrets by applying for a patent that uses and discloses the Plaintiff's trade secrets.

6

Convergence states that it entered into a Mutual Non-Disclosure Agreement with Helvetia, but that the document does not mention the Plaintiff or any other party. The Plaintiff, on the other hand, states that Convergence entered into an implied-in-fact contract with it and a contract with Tellisense, Encompass and Ufford for the benefit of the Plaintiff.

No employee or representative of Convergence has visited Indiana for any reason related to this matter. During the course of the project only a single consultant of Convergence ever met with a representative of the Plaintiff, and that was for a one-day meeting in Arizona. Any phone calls on which both a Convergence employee and a representative of the Plaintiff were present were not calls directed at Indiana, but instead conference calls that included employees from Helvetia and other companies, and for which the Convergence employee called into from Hong Kong.

On the other hand, Convergence made thirteen shipments, including adapted off-the-shelf products, to the Plaintiff in Indiana at Helvetia's request. Convergence also emailed Indiana-based employees of the Plaintiff, most notably to request payment, although Convergence argues that this was to prod the Plaintiff to pay a third party so that it would eventually receive payment. The Plaintiff and Convergence also had calls and emails to troubleshoot issues related to the hardware and software shipped to Indiana, including asking the Plaintiff to return materials for inspection, though Convergence notes that Helvetia directed them to respond to such inquires. The Plaintiff alleges that this troubleshooting allowed Convergence access to its trade secrets, but fails to provide any specific allegations on that issue. Convergence further notes that it never sold any products to the Plaintiff or received any payment from it, instead only dealing with the Plaintiff through or at the direction of Helvetia.

Convergence argues that it is not subject to personal jurisdiction in Indiana because Convergence has not conducted any business in Indiana related to the claims asserted in this litigation. In support of this argument, Convergence notes that the only specific jurisdictional allegations made by the Plaintiff are that Convergence (1) shipped products purchased by Helvetia to the Plaintiff; (2) responded to the Plaintiff's technical support inquiries; and (3) sent an email to the Plaintiff regarding payment. The Plaintiff does little to support its contention that personal jurisdiction would be appropriate. For example, the Plaintiff claims that "[b]oth Jerry Garrett and Albert Lai—indeed the entire [Convergence] company and its officers—engaged in repeated direct contact with [the Plaintiff], soliciting and forming a contract with the Plaintiff, knowing full-well that [the Plaintiff] was an Indiana company," Dkt. No. 74 at 13, but the affidavit the Plaintiff provides does not support this contention.[2] Such bare statements of legal conclusion, absent specific factual allegations, cannot support personal jurisdiction.

---

[2] The affidavit states, in relevant part:

> In addition to sending materials for the project into Indiana, both Convergence employees directed communications into Indiana related to the work and services that Convergence performed for [the Plaintiff's] project. For example, Convergence's Managing Director, Jerry Garrett, emailed [David Ribble, Director of Innovation for the Plaintiff] directly in October 2014 requesting payment from [the Plaintiff] for goods that Convergence sent to Indiana as part of the project.

Dkt. No. 74-1 at 3. The full email reads:

> Hi Dave;
>
> We hope all is well with you and the living lab testing is proceeding without a hitch, but with frequent occurrences of incontinence being alerted. On our side, we are continuing to fine tune the sensor's sensitivity and to streamline the sensor's manufacturing processes.
>
> We do need to bring to your attention a nagging issue. We shipped the pilot systems to you in May and as of today have not been paid the balance of funds due. It seems that during my frequent pleading for payments that all roads

With regard to the contract claims, to argue that Convergence purposely availed itself of the privilege of doing business in Indiana, the Plaintiff cites *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1361 (7th Cir. 1996), for the proposition that "the Seventh Circuit has held that specific jurisdiction exists when an out-of-state defendant targeted the forum state by transmitting goods and information into the forum state." Dkt. No. 74 at 10. However, in that case, the defendant's conduct "reflected a purposeful effort to obtain [the plaintiff's] business," as the defendant specifically sought the plaintiff's business, including visiting the forum state and engaging in substantial negotiations and communications to develop a contract and business relationship. *Mid-Am. Tablewares, Inc.*, 100 F.3d at 1361. The Plaintiff's factual allegations here do not rise to the level seen in *Mid-Am. Tablewares*, and the Plaintiff here has failed to demonstrate that the exercise of personal jurisdiction over Convergence would be appropriate.

For tort claims, the Plaintiff notes that it must show that Convergence "expressly aim[ed] or purposefully direct[ed]" its conduct at the forum. Dkt. No. 74 at 13 (citing *Calder v. Jones*, 465 U.S. 783, 789-790 (1984)). The Plaintiff alleges that Convergence expressly aimed its allegedly tortious conduct at Indiana "because it caused injury in Indiana, which was the focal point of the [alleged] torts." Dkt. No. 74 at 15. However, in support of this allegation, the

---

ultimately lead to you. We would really appreciate your help in getting the payment processed.

Have a GREAT Friday!
Jerry

Ps: I watched part of the Colts [sic] win over the Texans. Andrew Luck is the man

Dkt. No. 74-2 at 13 (internal emojis omitted).

9

Plaintiff only states, without citation to a more specific factual allegation, that "[Convergence] directed communications and shipments of goods to assist in the development of [the Plaintiff's] trade secrets" and that "Convergence insinuated itself into Indiana affairs, enabling it to misappropriate [the Plaintiff's] trade secrets (owned by [the Plaintiff] in Indiana), and by establishing a business relationship with [the Plaintiff] under which it was given access to [the Plaintiff's] confidential information and trade secrets." *Id*. These statements of legal conclusions cannot support personal jurisdiction over Convergence. Simply put, the Plaintiff has not provided specific factual allegations which could establish that Convergence "purposefully directed its activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state." *Grain Mktg., LLC*, 743 F.3d at 492. Accordingly, Convergence's motion to dismiss for lack of personal jurisdiction is **GRANTED.**

### III. The Helvetia Defendants' Motion to Dismiss for Failure to State a Claim and Insufficient Pleading

The Helvetia Defendants move to dismiss the Plaintiff's claim under the Defend Trade Secrets Act of 2016 (the "DTSA") for failure to state a claim.

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, if accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We "must accept as true all of the allegations contained in a complaint" that are not legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

*Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (citations omitted).

The Plaintiff alleges that the Helvetia Defendants misappropriated the Plaintiff's trade secrets in violation of the DTSA by "improperly us[ing] and disclos[ing] [the Plaintiff's] trade secrets without its consent by . . . prosecuting the '797 Patent, the '644 Patent, the '866 Patent, the '951 Patent, and the '652 Patent," and "have continued to misappropriate [the Plaintiff's] trade secrets by prosecuting patents, disclosing information, and claiming inventions on or after May 11, 2016 [(the date at which the DTSA went into effect)]." Dkt. No. 16 at 41.

To state a claim under the DTSA, the Plaintiff must identify an act of misappropriation that occurred after the statute's effective date. The Helvetia Defendants argue that "[t]he [First Amended Complaint] lacks facts showing a plausible case that an act prohibited by the DTSA occurred after the Act's effective date," referring to the Plaintiff's factual allegations as conclusory. Dkt. No. 60 at 13-15. The Plaintiff counters by arguing that it has identified patent activity which occurred after the DTSA's effective date, Dkt. No. 75 at 13, and that it does not need to be more specific with regards to its factual allegations, *id.* at 14.

While not necessarily framed as such, at issue is whether the allegations, as laid out by the Plaintiff in the First Amended Complaint, provide sufficient notice to the Defendants of its claims. In order to satisfy Fed. R. Civ. P. 8:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). At issue here is whether the Plaintiff's "factual allegations are so sketchy . . . that they fail to provide sufficient notice to [D]efendants of the [P]laintiff's claim." The Plaintiff references *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 915 (N.D. Ill. 2001), to support its position that more specificity is not required, but the

Court is not convinced.  In that case, the plaintiff stated that the trade secret included "profit and loss information, internal costs and overhead, operational information as related to San Francisco and other facilities throughout the country, and specific bid and proposal information related to San Francisco and other airports," *id*. at 818, which is more specific information than is alleged in this case.  Here the Plaintiff alleges that the trade secret is a "unique set of requirements" for the Project, Dkt. No. 16 at 4, but fails to provide the Defendants with notice specific enough to allow them to defend the claim.  Therefore, the Court **GRANTS** the Helvetia Defendants' motion to dismiss the DTSA claim.  Furthermore, because the deficiencies in the Plaintiff's claim apply equally to Defendant Encompass, the claim is dismissed against them as well.  *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related.").

The Helvetia Defendants also move to dismiss the remainder of the Plaintiff's claims against them.  However, the Court's jurisdiction over this case is premised upon the Plaintiff's DTSA claim, and "when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016).  Therefore, the Helvetia Defendants correctly argue that the dismissal of the DTSA claim will result in the dismissal of this case.  Accordingly, in the interests of judicial economy, the Court declines to consider the remainder of the Helvetia Defendants' motion and denies it without prejudice.

That said, the Plaintiff requests, and under Seventh Circuit law is entitled to, an opportunity to amend its complaint before the case is dismissed.  *See Barry Aviation, Inc. v.*

*Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.") (quotation marks and citation omitted). The Plaintiff may file a motion for leave to amend its complaint **within 14 days of the date of this Entry**. The Plaintiff may not assert claims against Defendants Convergence and Woodbury, but may otherwise amend its complaint to attempt to correct the deficiencies discussed above with regard to its DTSA claim and to address any of the other arguments made by the Helvetia Defendants in their motion to dismiss. If a future motion to dismiss is granted, the Plaintiff will not be given an additional opportunity to amend before the case is dismissed.

## IV. Conclusion

For the reasons set forth above, Woodbury's motion to dismiss, Dkt. No. 57 and Convergence's motion to dismiss, Dkt. No. 63, are **GRANTED**. Defendants Convergence and Woodbury are dismissed for lack of personal jurisdiction. The Helvetia Defendants' motion to dismiss, Dkt. No. 59, is **GRANTED IN PART**.

SO ORDERED: 10/17/18

_____
Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification