UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HILL-ROM SERVICES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cv-04725-TWP-MJD |
| TELLISENSE MEDICAL, LLC, et al., | ) ) ) |
| Defendants. | ) |

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on the Motion to Compel Production of Documents filed by Defendants Tellisense Medical, LLC, Encompass Group LLC, and Robert Ufford [Dkt. 313].[1] For the reasons set forth below, the motion is **GRANTED as to Helvetia and DENIED as moot as to Hill-Rom**.

**I. Background**

Plaintiff Hill-Rom Services, Inc. ("Hill-Rom") is a health care company that, inter alia, designs, manufactures, and sells hospital beds. In 2013, Hill-Rom contracted with Defendants Encompass Group, LLC, ("Encompass"), Tellisense Medical, LLC ("Tellisense"), and Robert Ufford to work with Hill-Rom on a project (hereinafter "the Project") to develop a moisture detection system that "would detect and signal the presence of incontinence events to healthcare

---

[1] Counsel for Defendants are reminded of Local Rule 5-6(a)(2), which requires counsel to give each electronically filed exhibit "a title which describes its content." Defendants failed to comply with this rule when filing the exhibits attached to their initial and reply briefs in support of the instant motion. *See* [Dkt. 314, Dkt. 331.]

personnel." [Dkt. 143 at 5.]  In a nutshell, in its Second Amended Complaint, Hill-Rom alleges that after Roc Lastinger became involved with the Project through his relationship with Tellisense, Lastinger formed Crossclaim Defendant Helvetia Wireless, LLC ("Helvetia") and, using Hill-Rom's trade secrets and confidential information that he obtained through his work on the Project, developed several inventions for which he filed patent applications.  In its Second Amended Complaint, Hill-Rom asserted numerous claims against Defendants, Helvetia, and Lastinger.  *See* [Dkt. 143].

Hill-Rom settled its claims against Helvetia and dismissed its claims against Lastinger and Helvetia in August 2019 after the death of Lastinger.  *See* [Dkt. 248].  As part of the settlement, Helvetia assigned to Hill-Rom a number of patents and patent applications relating to the fields of incontinence detection and moisture sensing.  The transferred patents and patent applications were all of the assets owned by Helvetia at that time.  Helvetia also directed its former patent counsel, Lawrence Letham, to forward his files relating to the transferred patents and patent applications to Hill-Rom.

## II. Discussion

Defendants seek to compel Hill-Rom and Helvetia to produce the documents in the files that Letham forwarded to Hill-Rom ("the Letham Documents") that are responsive to Defendants' discovery requests and that have been withheld from production on privilege grounds.  There is no dispute that the Letham Documents were privileged before they were provided to Hill-Rom.  However, the parties dispute whether the transfer of the documents to Hill-Rom waived the privilege.  Hill-Rom also asserts that Defendants' motion to compel is untimely and that Defendants have failed to demonstrate that the documents are responsive to

Defendants' discovery requests served on Hill-Rom. Each of these issues is addressed, in turn, below.

### A. *Privilege Waiver*

Helvetia correctly sets forth the applicable law as follows:

> The "right to assert or waive a corporation's attorney-client privilege is an incident of control of the corporation." *USI Ins. Servs., LLC v. Ryan*, No. 1:14-CV-151, 2014 U.S. Dist. LEXIS 91591, at *9 (N.D. Ind. July 7, 2014) (quotations and citations omitted). Courts disfavor use of a bright-line rule to determine when the attorney-client privilege transfers with assets because such a rule "cannot capture the myriad of ways control of a corporation or a portion of a corporation can change hands." *Id.* (quotations and citations omitted). When evaluating whether the attorney-client privilege transfers, courts should "examine whether the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management." *Id.* If they do, then the "attorney-client privilege will follow as well." *Id.* (quotations and citations omitted).

[Dkt. 321 at 2-3.] Hill-Rom, on the other hand, asserts that "courts routinely find that when one party acquires all of another party's assets, it also acquires the attorney-client privilege." [Dkt. 323 at 1.] The cases cited by Hill-Rom do not support this assertion.[2]

---

[2] Nor does the case cited by Hill-Rom for the proposition that Defendants "have the evidentiary burden to show that a waiver occurred" support its argument. [Dkt. 323 at 8] (citing *Tecnomatic, S.p.A. v. Remy, Inc.*, 2014 WL 2510202, at *3 (S.D. Ind. June 3, 2014)); *see also id.* at 1 (noting that "Defendants proffer no evidence and rely only on attorney argument that has no probative value"). Defendants' burden is not an evidentiary burden, but rather a burden to articulate a reason why they believe the privilege has been waived. That simply means that Defendants cannot assert generally that the privilege may have been waived and thereby require Hill-Rom to demonstrate that neither it nor Helvetia did anything that waived the privilege. Here, Defendants have satisfied their burden by pointing to the undisputed fact that Helvetia provided the documents at issue to a third party, Hill-Rom. Disclosure of privileged documents to a third party generally will constitute a waiver of the attorney client privilege. The question then becomes one of law—did a waiver occur given the particular circumstances of the disclosure in this case? Hill-Rom's suggestion that a finding of non-waiver would be appropriate simply because Defendants failed to present **evidence** of the nature of those circumstances is utterly without merit. Any such evidence is squarely within the control of Hill-Rom and Helvetia and, in any event, there is no factual dispute regarding what happened. The dispute is how to apply the law to the facts, which Defendants have appropriately addressed.

3

Hill-Rom cites to several cases in which it asserts that courts founds a transfer of privilege under "circumstances strikingly similar to those here." *Id.* at 9. In fact, each of those cases hinged on whether the acquiring entity obtained control over the transferor corporation, because "[t]he power to assert or waive a corporation's attorney-client privilege is an incident of control of the corporation." See *Gilday v. Kenra, Ltd.*, 2010 WL 3928593, at *1 (S.D. Ind. Oct. 4, 2010) (citing *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 349 (1985); *Am. Int'l Specialty Lines Ins. Co. v. NWI–I, Inc.,* 240 F.R.D. 401, 406 (N.D. Ill. 2007)); *USI Ins. Servs., LLC v. Ryan*, 2014 WL 3054278, at *4 (N.D. Ind. July 7, 2014) ("So when determining whether the attorney-client privilege transfers, courts should examine whether the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, and if they do, the attorney-client privilege will follow as well."); *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1002 (N.D. Ill. 2008) ("Following *Weintraub,* the analytical focus is on whether control of the predecessor organization passed to the successor organization.") (citations omitted); *Schleicher v. Wendt*, 2010 WL 1948218, at *1 (S.D. Ind. May 14, 2010) ("[T]he power to assert or waive a corporation's attorney-client privilege is an incident of control of the corporation.") (citations omitted).

The single case cited by Hill-Rom that supports its argument that the Latham Documents remain privileged is *Black Hills Media LLC v. Sonos, Inc.*, 2014 WL 12569359 (C.D. Cal. July 9, 2014). In that case, the court acknowledged that "[t]he question before the Court then is whether Tribal's sale of its patent portfolio to Concert was merely the transfer of some assets or a transfer of control of the company." *Id.* at *2. However, that was not the question the court actually answered; rather, the court concluded that the deal between Tribal and Concert "amounted to a

4

transfer of substantially all of Tribal's assets—and control over those assets," and that this "triggered the transfer of the attorney-client privilege to Concert at that time" because "[t]o rule otherwise would be to conclude that the attorney-client privilege simply evaporated into thin air with this transfer." *Id.* That conclusion ignores a fundamental fact: the attorney-client privilege belongs to the **client**; it does not attach to an **asset** of the client and therefore does not transfer to the new owner when the asset is transferred. Cf. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1338 (Fed. Cir. 1988) ("The bottom line, however, is that attorneys represent clients—not legal positions or patents."). This is what is meant by the rule that the power to assert or waive a corporation's attorney-client privilege is an incident of control of the corporation; if a purchaser acquires control of the corporation—the client—the purchaser steps into the shoes of the client for purposes of the privilege. If the purchaser simply acquires assets, the transferor corporation remains the client.

Tellingly, the word "control" does not appear in Hill-Rom's brief, despite the fact that it figures prominently in each of the cases it cites on this issue. Hill-Rom bases its argument on the fact that it acquired all of Helvetia's assets and that it "continued operations in the area covered by the patents." [Dkt. 323 at 9.] But Hill-Rom continuing **its own** operations is irrelevant; what would be relevant is if Hill-Rom acquired Helvetia's assets in order to continue **Helvetia's** operations. Hill-Rom did not continue Helvetia's operations, however, because by the time of the settlement Helvetia had no operations; the record indicates that Helvetia ceased its normal business operations in approximately April 2018, more than a year prior to the settlement. [Dkt. 231-1 at 2.] Hill-Rom asserts that "[p]rior to the assignment to Hill-Rom, Helvetia was simply an intellectual property holding company," [Dkt. 323 at 10], but that is inaccurate. Helvetia was an entity that had ceased operations but had not yet divested all of its assets. Hill-Rom

purchased those assets because they were valuable to Hill-Rom's own business operations; it did not acquire them because it wished to take over Helvetia's business operations.

The power to assert or waive a corporation's attorney-client privilege is an incident of control of the corporation. Because Hill-Rom does not, and cannot, assert that it obtained "control" of Helvetia in any sense of the word, there is no basis for finding that Hill-Rom can assert the attorney-client privilege over the Letham Documents. To the contrary, Helvetia waived the privilege by giving the documents to Hill-Rom.

### B. *Timeliness of Motion to Compel*

Hill-Rom next argues that the motion to compel should be denied because of Defendants' "inexcusable delay" in filing it. [Dkt. 323 at 13.] Hill-Rom notes that (1) Defendants filed their motion to compel on the last day of the discovery period; (2) Defendants waited for several months after the dispute arose to file their motion; and (3) while Defendants included the dispute in two Joint Status Reports, they failed to include it in the most recent report, implying that "they no longer considered the Letham Documents an active discovery dispute," *id.* at 14. Thus, Hill-Rom argues, Defendants failed to pursue the documents in a timely manner.

This dispute did not arise until November 19, 2019, when Hill-Rom refused to produce the documents on privilege grounds. Defendants filed their motion to compel on February 7, 2020. Hill-Rom does not suggest precisely when it believes the timeliness window closed on the issue, but the Court does not find the approximately 80-day delay to be problematic given the scope of discovery in this case. As the cases cited by Hill-Rom demonstrate, there are instances in which, given the totality of the circumstances, an eleventh-hour motion to compel can be denied as untimely. This is not such an instance. Similarly, there could be instances in which the failure to continue to include a dispute in discovery reports could prejudice the opposing parties

in some way, thus justifying the denial of a later motion raising the dispute. Hill-Rom points to no such prejudice here, and the Court declines to find that Defendants waived the right to obtain the Letham Documents because the issue was omitted from a discovery report.

Hill-Rom also argues that Defendants' failure to move to compel the Letham Documents prior to deposing certain other witnesses to whose testimony the documents might be relevant, and their decision not to depose two other witnesses who may have had knowledge of the content of the documents, demonstrates that Defendants do not really believe the documents are important to their defense. Rather, Hill-Rom posits, Defendants have filed the instant motion solely to "drive up the costs on Hill-Rom and Helvetia through motion practice." *Id.* at 14.[3] Given the centrality of the Letham Documents to the issues in this case, the Court finds that argument specious. The fact that Defendants did not attempt to delay depositions while it sought the Letham Documents is not surprising, given the fact that the Court has repeatedly informed counsel that the discovery deadline in this case would not be extended.

### C. *Responsiveness to Discovery Requests*

Finally, Hill-Rom argues that

> Defendants improperly seek to enforce discovery requests that they cannot move to compel on because they were served on Hill-Rom by another party—Helvetia. In any event, the document requests served on Hill-Rom by the Encompass Defendants are defective because they lack the particularity required by Rule 34(b). Indeed, the Encompass Defendants' document requests to Hill-Rom do not even mention the word 'Letham,' and are overly broad, vague, and could not have put Hill-Rom on notice that they wanted the Letham Documents.

---

[3] In the introductory portion of its brief, Hill-Rom states that Defendants "filed this motion only to try to gain an unfair advantage over Hill-Rom." [Dkt. 323 at 2.] Given the amount of resources both sides have expended on this case, the fact that Hill-Rom had to respond to an uncomplicated discovery motion can hardly be characterized as giving Defendants an unfair advantage.

[Dkt. 323 at 2.] While Hill-Rom is correct that Defendants may not seek to compel **Hill-Rom** to respond to **Helvetia's** document requests, Defendants' motion to compel is also directed to Helvetia. *See* [Dkt. 313 at 1]. Given that Helvetia has filed a response to the instant motion and does not dispute that the Letham Documents are responsive to Defendants' document requests to it, the Court need not address Hill-Rom's arguments with regard to the adequacy of Defendants' document requests to Hill-Rom. There is no indication that Helvetia does not have the Letham Documents,[4] and the Court has now ruled that they are not privileged. Accordingly, the motion to compel is **granted** as to Helvetia and **denied as moot** as to Hill-Rom.

### D. Attorney Fees

While, as noted, Defendants have moved to compel both Hill-Rom and Helvetia to produce the Letham Documents, Helvetia's refusal to produce them is wholly based on Hill-Rom's claim of privilege. The Court finds that Helvetia's decision not to produce the documents based on what it assessed to be a "colorable claim" of privilege by Hill-Rom was substantially justified; it was reasonable for Helvetia to honor Hill-Rom's claim of privilege under the circumstances. Accordingly, an award of fees against Helvetia would not be appropriate.

---

[4] Because it did not do so in response to Defendant's motion, the Court does not anticipate that Helvetia will assert in response to this ruling that some or all of the Letham Documents are not in its possession or control. However, Helvetia has asserted that "Helvetia transferred all of Lawrence Letham's files, including the communications and information on Helvetia's privilege log, to Hill-Rom." [Dkt. 321-1 ¶ 7.] Further, in a reported conversation with Mr. Letham, Mr. Letham purportedly stated that "all of the documents that he previously had in his possession . . . had been turned over to Hill-Rom Services, Inc." [Dkt. 314-1 ¶ 4.] Helvetia's statement does not represent that it failed to retain a copy of the transferred documents, and it would seem odd indeed if Mr. Latham failed to maintain a copy of his own files, which remain within Helvetia's control. Nevertheless, should Helvetia now claim that some or all of the Letham Documents are not in its possession or control, then Helvetia is ordered to immediately notify the Court of such fact, in which event the Court will reconsider its ruling with regard to whether Hill-Rom should be compelled to produce the documents, as well as its ruling with regard to whether a fee award should be made against Helvetia and/or Hill-Rom.

8

With regard to Hill-Rom, while the Court is not granting the motion to compel with regard to Hill-Rom, that does not preclude a fee award against Hill-Rom, inasmuch as Hill-Rom is "the party . . . whose conduct necessitated the motion." *See* Fed. R. Civ. P. 37(a)(5)(A). However, given the fact that Hill-Rom's position with regard to the privilege waiver was supported by a highly analogous, albeit wrongfully decided, case, the Court finds Hill-Rom's position to be substantially justified. Accordingly, the Court will not award fees against Hill-Rom either.

### III. Conclusion

For the reasons set forth above, the Motion to Compel Production of Documents [Dkt. 313] is **GRANTED as to Helvetia** and **DENIED as moot as to Hill-Rom**.

SO ORDERED.

Dated: 24 FEB 2020

*[Signature]*

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.